UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TEKNOR APEX COMPANY | : | |
| | : | |
| v. | : | C.A. No. 12-417S |
| | : | |
| HARTFORD ACCIDENT & | : | |
| INDEMNITY COMPANY, et al. | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Plaintiff Teknor Apex Company ("Teknor Apex") commenced this declaratory judgment and breach of contract action on June 1, 2012 against Defendants Hartford Accident & Indemnity Company and Hartford Fire Insurance Company (collectively "Hartford") and Travelers Casualty & Surety Company ("Travelers") for insurance coverage related to claims asserted against it by several private litigants and the Environmental Protection Agency ("EPA") in connection with environmental contamination of the Peterson-Puritan Superfund Site located in Cumberland, Rhode Island.  Hartford is now moving the Court to dismiss or stay these proceedings in favor of a later-filed Massachusetts Superior Court lawsuit, Hartford Accident & Indem. Co., et al. v. Travelers Cas. & Sur. Co., et al., No. 12-02526 (Mass. Super. Ct. July 5, 2012) (the "Massachusetts Action").

Although it deals with the same Peterson-Puritan dispute, the Massachusetts Action is broader than this action, since it includes claims and parties related to four additional Superfund Sites that were not a part of Plaintiff's initial Complaint in this Court.  On the other hand, it does not include the breach of insurance contract claims that Teknor Apex has asserted in its Complaint. Teknor Apex opposes Hartford's Motion and moves for leave to amend its Complaint and expand it to include the same parties and claims pending in the Massachusetts Action.

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Hartford's Motion to Dismiss or, Alternatively, to Stay Proceedings.  (Document No. 17).  Teknor Apex opposes the Motion, and also counters with a Motion for Leave to File Amended Complaint. (Document Nos. 18 and 19).  A hearing on the Motions was held on October 25, 2012.  For the reasons stated below, I recommend that Hartford's Motion to Dismiss or, Alternatively, to Stay Proceedings (Document No.  17) be DENIED and that Teknor Apex's Motion for Leave to File Amended Complaint (Document No. 18) be DENIED without prejudice to renewal at a later date.

**Background**

Teknor Apex is a manufacturing company based in Pawtucket, Rhode Island.  (Document No. 1 ¶ 2). Teknor Apex has certain primary general liability insurance polices with Hartford and Travelers Casualty & Surety Co.[1]  Id. at ¶¶ 21-24.  Teknor Apex also has excess insurance policies with Defendant Hartford Accident & Indemnity Co., American Home Assurance Co., First State Insurance Co. and Westport Insurance Corp., f/k/a Employers Reinsurance Corp.  (Document No. 18 p. 7). The excess coverage policies provide coverage in the event that coverage under the primary policies are exhausted.  Id. at pp. 8-9.

As a result of its business operations, Teknor Apex became subject to certain environmental claims.  Id. at pp. 7-8.  Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), the EPA designated Teknor Apex as a Potentially Responsible Party ("PRP") for contamination at three Superfund sites: the Peterson-Puritan Superfund Site in Cumberland, Rhode Island; the Centredale Manor Restoration Project Superfund Site in North Providence, Rhode Island; and the Shpack Landfill Superfund Site in Attleboro, Massachusetts and

---

[1] Teknor Apex originally purchased insurance policies from Aetna Casualty & Surety Co., which transferred to Travelers as a successor in interest to Aetna Casualty & Surety Co.  See Document No. 1 ¶¶ 11, 22.

Norton, Massachusetts. Id. at pp. 7, 12-13. In addition, Teknor Apex was designated a PRP pursuant to CERCLA, as well as Rhode Island Department of Environmental Management ("Rhode Island DEM") Regulations, for contamination at two other Rhode Island Superfund sites: the Former Great Lakes Container Corporation Site and the Coventry Landfill Site,[2] which are both located in Coventry, Rhode Island. Id. at pp. 12-13.

In addition to EPA and Rhode Island DEM regulatory actions, Teknor Apex was named as a defendant in Unilever Bestfoods et. al. v. Am. Steel & Aluminum Corp. et. al., C.A. No. 01-496L (D.R.I. Oct. 15, 2001) (the "Unilever lawsuit"), brought pursuant to CERCLA by two entities also named as PRPs for the Peterson-Puritan Site. (Document No. 18 pp. 7-8). In or around June 2010, Teknor Apex entered into negotiations that resulted in the settlement of the claims brought against it in the Unilever lawsuit for $1.9 million. (Document No. 1 ¶ 20).

Teknor Apex sought coverage from Hartford and Travelers for its defense costs as well as its liabilities from the Peterson-Puritan Site. Id. ¶¶ 25-30. The request for coverage included the $1.9 million paid to settle the Unilever lawsuit. Id. When coverage disputes arose, Teknor Apex filed the instant action on June 1, 2012, seeking (1) a declaratory judgment that Defendants are obligated to provide coverage under the primary insurance policies; and (2) damages for breach of their contracts of insurance.

Hartford filed the Massachusetts Action on July 3, 2012. (Document No. 17 p. 8). The Massachusetts Action is a declaratory judgment action in which Hartford is asking the court for a ruling as to the extent of coverage obligations for Hartford, Travelers and Teknor Apex's excess

---

[2] For the Coventry Landfill Site, the designation of Teknor Apex as a PRP was by the Rhode Island DEM only, though it was pursuant to both CERCLA and Rhode Island DEM regulations. (Document No. 18 p. 13).

insurance providers[3] in connection with the Peterson-Puritan Site as well as the other four Superfund Sites in which Teknor Apex was designated a PRP. (Document No. 17-1 p. 2). The Massachusetts Action does not include Teknor Apex's breach of contract claims. (Document No. 19 p. 17). After filing its case in Massachusetts, Hartford filed a Motion in this Court seeking to dismiss or stay these proceedings in light of its pending claims in Massachusetts. (Document No. 17 p. 1). Teknor Apex opposes the Motion and seeks leave to amend its Complaint to add claims against its excess insurance providers[4] for the Peterson-Puritan Site and the other four Superfund Sites. (Document No. 18 p. 20). In other words, Teknor Apex now seeks to expand this action to make it effectively parallel to the Massachusetts Action.

**Discussion**

**A.      The Motion to Dismiss or Stay**

The narrow issue presented by Hartford's Motion to Dismiss or Stay is whether this Court should abstain from exercising its federal subject matter jurisdiction in this case in favor of the Massachusetts Action. Teknor Apex's Complaint presents a claim for declaratory relief in Count 1, as well as a claim for damages for breach of contract in Count 2. Thus, the Court must examine the abstention doctrine(s) applicable to these types of claims.

In Mass. Biologic Lab. of the Univ. of Mass. v. Medimmune, LLC., No. 12-cv-10006, 2012 WL 2552317 (D. Mass. July 2, 2012), the District of Massachusetts acknowledged that there is a

---

[3] In the Massachusetts Action, two excess insurance providers were named: First State Insurance Co. as a Plaintiff and American Home Assurance Co. as a Defendant. "Doe Insurers 1-100" were also listed as Defendants because Hartford did not know the identity of Teknor Apex's other excess insurance providers, but it nonetheless wanted to include all of them. (Document No. 17-1 p. 4).

[4] In its proposed Amended Complaint, Teknor Apex is seeking to add American Home Assurance Co., First State Insurance Co. and Westport Insurance Corp. f/k/a Employers Reinsurance Corp. as Defendants, in addition to Hartford and Travelers. (Document No. 18 pp. 6-7).

circuit split regarding how to analyze abstention questions in cases that present both declaratory and

damages claims.  The <u>Medimmune</u> Court noted that the First Circuit "has not yet staked out a clear

position on the circuit split," but that the "surgical approach" was "a method at least approved of,

if not mandated" by the First Circuit in <u>Rossi v. Gemma</u>, 489 F.3d 26 (1st Cir.  2007).  <u>Id.</u> at **3-5;

<u>see also</u> <u>Seaton Ins.  Co. v. Clearwater Ins.  Co.</u>, 736 F. Supp. 2d 472, 475 (D.R.I. 2010).  In its brief

and at the hearing on these Motions, Hartford argued that the <u>Wilton</u> abstention standard applicable

to declaratory relief claims should be applied to all of the claims presented in this case, arguing that

the "heart" of this action is the declaratory judgment claim to determine the coverage obligations

of Hartford and Travelers.  Hartford argues that the breach of contract claim is "immaterial" because

the "essence of the complaint is a request for declaratory relief."  (Document No. 17 p. 9 n.2).

Hartford's position, however, is contrary to the First Circuit's approach in <u>Rossi</u>.  As this Court has

pointed out, "a strict reading of <u>Rossi</u> requires the [C]ourt to apply <u>Colorado River</u> to the legal

claims." <u>Seaton</u>, 736 F. Supp. 2d at 476.  Thus, I reject Hartford's arguments and will apply the

<u>Colorado River</u> test to the breach of contract claim and the <u>Wilton</u> test to the declaratory judgment

claim.

Under the "surgical" or claim-by-claim approach, the Court applies the standard established

in <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976) to legal claims and

applies the standard adopted by <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277 (1995) to the declaratory

judgment claims.  <u>Id.</u>  This Court has previously recognized that it is "well-settled that there is a

more lenient abstention standard for declaratory claims...than for so-called 'coercive' claims seeking

damages or injunctive relief..."  <u>Seaton</u>, 736 F. Supp. 2d at 474.

**1.      The <u>Colorado River</u> Standard of Review**

In <u>Colorado River</u>, the Supreme Court noted that federal courts have "the virtually unflagging obligation...to exercise the jurisdiction given them," and advised the lower courts that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." 424 U.S. at 813, 817. In order for a Court to abstain under <u>Colorado River</u>, two requirements must be met: first, there must be "parallel" state court proceedings; and second, there must exist "exceptional circumstances" warranting relinquishment of federal jurisdiction. <u>OHI Asset Lender, LLC v. Woodland Manor Improvement Ass'n</u>, 687 F. Supp. 2d 12, 18-22 (D.R.I. 2010).

Two actions are "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issues..." <u>Medimmune</u>, 2012 WL 2552317 at *6 (citations omitted); <u>see also</u> <u>OHI Asset Lender</u>, 687 F.Supp. 2d at 17. If there are differences as to the parties or claims, the Court must evaluate whether the differences are substantial enough to "render the cases not parallel." <u>Medimmune</u>, 2012 WL 2552317 at *7. "If the proceedings are not parallel, the <u>Colorado River</u> doctrine does not apply." <u>OHI Asset Lender,</u> 687 F. Supp. 2d at 18.

Although these cases present related coverage issues, they, at present, are not parallel since they do not have a sufficient identity of parties and claims. In fact, one of Hartford's primary arguments in support of abstention is that the Massachusetts Action is a much more comprehensive litigation. In short, the present case focuses on just one Superfund Site (Peterson-Puritan) located in this District and seeks to obtain the Court's ruling both as to a breach of the insurance policies as well as a declaration as to the parties' legal rights. The Massachusetts Litigation, in contrast, applies to all five Superfund Sites and seeks solely a declaratory ruling. As the insurer, Hartford, of course, did not allege breach of contract in the Massachusetts Litigation, but asserted that Teknor Apex could "refile" its breach of contract counts in the form of a counterclaim or crossclaim in

Massachusetts. Additionally, Hartford Fire Insurance Co. is not a named party in the Massachusetts Litigation, because Hartford declares that an "absolute pollution exclusion" omits coverage. (Document No. 17 p. 7 n.1). In the present action, Hartford Fire Insurance Co. is included, and Teknor Apex has placed the extent of the exclusion in dispute. (Document No. 19 p. 18).

The wrinkle in this "parallel case" analysis, however, is that Teknor Apex is presently seeking to amend its claims here to effectively make the cases parallel. Thus, although the Court could conclude that an analysis of the Colorado River factors is unnecessary because the actions are not parallel at this time, given the Plaintiff's desire to make the actions equivalent, I will assume, arguendo, that the actions are parallel and consider the Colorado River "exceptional circumstances" factors.

Under Colorado River, a district court may not abstain from exercising jurisdiction unless "there exist 'exceptional' circumstances, 'the clearest of justifications,' that can suffice...to justify the *surrender* of that jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25-26 (1983) (emphasis in original). The Colorado River doctrine is "to be used sparingly and approached with great caution." Medimmune, 2012 WL 2552317 at *3, quoting Nazario-Lugo v. Caribevision Holdings, Inc., 670 F.3d 109, 115 (1st Cir. 2012).

The factors the Court must balance under a Colorado River analysis include:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

<u>Seaton</u>, 736 F. Supp. 2d 472, 474 n.1.  "The eight factors are not a 'mechanical checklist,' but rather are to be applied in a 'pragmatic, flexible manner with a view to the realities of the case at hand.'" <u>Medimmune</u>, 2012 WL 2552317 at *7, <u>quoting</u> <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. 1, 21.

   **2.      Analysis of the Breach of Contract Claims**

   Next, I will apply <u>Colorado River</u> and consider whether abstention is appropriate on the breach of contract claims.  The first <u>Colorado River</u> factor, which asks whether either court has assumed jurisdiction over a <u>res</u>, does not apply because there is no <u>res</u> involved.

   The second <u>Colorado River</u> factor considers the geographical inconvenience of the federal forum, and, in this case, it is clear that Rhode Island is not geographically inconvenient to either party.  Hartford conducts business in Rhode Island, Teknor Apex is a Rhode Island company, and four of the five Superfund Sites are located in Rhode Island.

   The third <u>Colorado River</u> factor is the desirability of avoiding piecemeal litigation.  This factor presents legitimate concerns, since the existence of these two separate actions creates a risk of piecemeal litigation and potentially inconsistent judgments.  However, it was Hartford's strategic choice to respond to this case by filing its own lawsuit in Massachusetts, rather than seeking to expand this action, which created the risk of piecemeal litigation.  Hartford could have brought its claims here, but chose not to.  Thus, this factor weighs against abstention and in favor of Teknor Apex.

   The fourth <u>Colorado River</u> factor examines the order in which the forums obtained jurisdiction, and favors Teknor Apex, as the present action was first filed.

   The fifth <u>Colorado River</u> factor considers whether federal or state law controls.  In the present case, state law controls, and the issue is whether Rhode Island or Massachusetts state law

will govern the resolution of these insurance coverage claims. Neither party has fully briefed the choice-of-law issues; however, at the hearing on this Motion, Teknor Apex asserted that Rhode Island law will apply, and it is not aware of "anything to indicate that anything other than Rhode Island law will apply."  Since Teknor Apex is a Rhode Island Company and four of the five Superfund Sites are located in this jurisdiction, it appears very likely that Rhode Island law would apply to the facts of this case and thus this factor weighs against abstention.

The sixth <u>Colorado River</u> factor considers whether the state forum is inadequate to protect the parties' interest.  There is nothing on the record to suggest that Massachusetts would be a more or less convenient or effective forum.  This factor is neutral, since both the Massachusetts Superior Court and this Court are fully capable of handling this case and adequately protecting the parties' interests.

The seventh <u>Colorado River</u> factor considers the "vexatious or contrived nature of the federal claim."  Subsequently, however, it has been recognized that "the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under <u>Colorado River</u>." <u>Moses H. Cone Mem.</u>, 460 U.S. 1, 17 n.20.  Thus, "a district court is to look beyond the federal action and consider the circumstances giving rise to the filing of the state suit." <u>Medimmune</u>, 2012 WL 2552317 at *8 (noting that "[f]orum shopping through the filing of declaratory judgment actions is no more appropriate when it favors state over federal jurisdiction than it is when it favors the reverse.") (citation omitted).  Thus, I must wade into the parties' disagreement about whether the filing of the Massachusetts Action was an attempt to forum shop.

The instant action was the first-filed, and the record indicates that Teknor Apex promptly served Defendants and received return receipts as to service.  (<u>See</u> Document No. 19-1 p. 2).  About

ten days after receiving the return receipts, the Summons and Complaint served on Hartford was sent by mail to Teknor Apex with a "Return to Sender" notation.  (Document No. 19-1 ¶¶ 6-8).  Unable to contact Hartford's counsel, Teknor Apex re-served the Summons and Complaint on Hartford.  Id. ¶ 11.  Hartford then proceeded to file its own Complaint in Massachusetts Superior Court before submitting any request for additional time to respond in this case.  Hartford's Answer in this case does not assert any counterclaims or cross-claims, nor did it attempt to add any additional parties to the instant action. Rather, Hartford chose Massachusetts Superior Court for reasons it described at the hearing as "not forum shopping" but instead, merely "strategic."

Forum shopping is defined by Blacks Law Dictionary as "[t]he practice of choosing the most favorable jurisdiction or court in which a claim might be heard."  Black's Law Dictionary (9th ed. 2009).  Another definition of forum shopping describes it as, "[s]election of a court with an eye towards gaining an advantage based on the forum's favorable substantive law or the avoidance of unfavorable law in an alternative forum."  Util. Workers Union of Am., AFL-CIO v. Dominion Transmission, Inc., C.A. No. 06-687, 2006 WL 2794568 at *3 (W.D. Pa. Sept. 27, 2006).  Applying these definitions and common sense, it is clear that Hartford made a "strategic" decision to try to relocate this dispute from Federal Court in Rhode Island to state court in Massachusetts.  Thus, since its goal is to move this legal dispute from Teknor Apex's chosen forum to its chosen forum, it is forum shopping.

It is plainly apparent that Hartford strategically chose Massachusetts state court and also strategically chose to expand the action to include additional parties and claims not included in Teknor Apex's Complaint in order to trump this case.  The narrow case pending in this Court relates directly to Unilever Bestfoods v. Am. Steel & Aluminum Corp., C.A. No. 01-496L, a case that has

been litigated in this District for many years and for which Teknor Apex asserts there are still unresolved questions as to final damages.  See Document No. 722 in C.A. No. 01-496L.  Hartford has significantly broadened the litigation through its Massachusetts Complaint and now asserts that because its later-filed action is more comprehensive, it should be deferred to.  While there is nothing inherently wrong with Hartford selecting Massachusetts Superior Court as its forum of choice, there are several factors that counsel against this Court surrendering its federal subject matter jurisdiction and deferring to Hartford's Massachusetts Action.

First, Teknor Apex's Complaint centers on the parties' settlement in the Unilever case which was litigated in this District and concerns the Peterson-Puritan Superfund Site which is located in this District.  In contrast, although the Massachusetts Action has some ties to Massachusetts, those ties are much more tenuous than the Rhode Island ties.  For example, only one out of the five Superfund Sites is located in Massachusetts, and none of the parties to the case are Massachusetts residents.  Hartford points out that the First State policies issued to Teknor Apex "appear to have been written out of First State's administrative office in Boston." (Document No. 22 p. 6).  On the other hand, with Teknor Apex and four of the Superfund Sites located in this District, it is likely that many of the documents and witnesses to be called would come from this District.  Thus, while Hartford was certainly legally entitled to file its Complaint in Massachusetts, it has not shown that Massachusetts is a better forum.

I must also take into consideration that abstention in this case would deprive Teknor Apex of its choice of a federal forum.  Additionally, the Massachusetts Action does not encompass all of the claims pending between the parties since it does not include the breach of contract claim included in Teknor Apex's Complaint.  Finally, I am unpersuaded by Hartford's reasoning that the

-11-

more "comprehensive" action should automatically gain an advantage over a more narrowly crafted Complaint. If the Court gave deference to Hartford's forum choice simply because it filed a Complaint that expanded the claims to be litigated, it would discourage the potential efficiencies of "surgical" pleading and encourage other litigants to add all potential claims and parties to cases to fend off potential forum shopping. As noted, Hartford is entitled to select a forum that it believes best serves its client; however, it is this Court's task to examine all of the factors before it, and, on balance, I find that the circumstances of Hartford's selection of Massachusetts state court is another factor that weighs against abstention in this case.

The eighth Colorado River factor considers the respect for principles underlying removal jurisdiction. "This factor is relevant if a plaintiff attempted to evade the policy choice implicit in 28 U.S.C. § 1441 that only a defendant may remove a lawsuit from state court to Federal Court. It applies where a dual filing in state and federal forums has the same effect as if the plaintiff had actually removed the original suit." Valle-Arce v. Puerto Rico Ports Auth., 585 F. Supp. 2d 246, 254 (D.P.R. 2008) (internal citations omitted). In the present case, this factor is not relevant.

Thus, after careful consideration of the Colorado River factors, there are no exceptional circumstances present that would justify this Court's abstention from exercising its federal jurisdiction for the breach of contract claim. Though there is a possibility of duplicate proceedings and piecemeal litigation, those concerns are outweighed by the undercurrent of forum shopping, the fact this action was the first-filed and the lack of any geographical inconvenience. Under these circumstances, the risk of duplicate proceedings alone does not constitute an "exceptional circumstance" sufficient to justify abstention.

3.      The **Wilton/Brillhart** Standard of Review

-12-

When a federal court is tasked with determining whether to abstain from jurisdiction in a declaratory judgment action, the more forgiving, discretionary standard set forth in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495 (1942), applies.  Wilton, 515 U.S. at 285-286.  See also Standard Fire Ins. Co. v. Gordon, 376 F. Supp. 2d 218, 223 (D.R.I. 2005).  In Wilton, the Supreme Court distinguished the treatment of declaratory judgment claims from coercive claims based on the language of the Declaratory Judgment Act itself.  The Wilton Court noted that, "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." 515 U.S. at 286.  The Wilton Court reasoned that there was justification for "a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted" under the Colorado River standard.  Id. at 286. Thus, when, as here, a federal plaintiff seeks declaratory relief and there is a state court proceeding "presenting the same issues, not governed by federal law, between the same parties," the Court applies the more broad test established in Wilton, rather than the "exceptional circumstances" test set forth in Colorado River.  Id.

Under the Wilton standard, a court considers "'whether the questions in controversy between the parties to the federal suit...which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'"  Id. at 282, quoting Brillhart, 316 U.S. 491, 495.  Wilton employs a five-factor test which requires the Court to weigh:

> (1) whether the same parties are involved in both cases; (2) whether the claims made in the declaratory judgment action can be adjudicated in the state court action; (3) whether resolution of the declaratory judgment action turns on factual questions that will be litigated in the state court action; (4) whether the issues presented are governed by state or federal law; and (5) what effect the declaratory judgment action is likely to have on potential conflicts of interest between the insurer and the insured.

-13-

Seaton, 736 F. Supp. 2d at 476. The Wilton Court noted that in the declaratory judgment context, the general principle that federal courts should adjudicate those cases that fall within their jurisdiction, "yields to considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288.

### 4.    Analysis of the Declaratory Judgment Claim

Turning next to the declaratory judgment claim, I will consider the parties' competing arguments under the standard set forth in Wilton. The very first Wilton factor considers "whether the same parties are involved in both cases." As previously discussed, the cases are not presently "parallel," since the Massachusetts Action involves additional parties and claims. Moreover, there is an additional difference as to the parties involved in the Massachusetts Action – Hartford Fire Insurance Co. – is not a named party, because Hartford declares that an "absolute pollution exclusion" omits coverage. (Document No. 17 p. 7 n.1).  In the present action, Hartford Fire Insurance Co. is a named party and Teknor Apex has placed the extent of the exclusion in dispute. (Document No. 19 p. 18).  While Hartford may have a valid argument on the merits that Hartford Fire Insurance Co. has no coverage obligations to Teknor Apex, I must take into account that Teknor Apex has placed the policy language in dispute and has asked for a declaration as to the scope of the coverage. If this Court abstains, the Massachusetts Action may not ultimately determine Hartford Fire Insurance Co.'s coverage obligations.

The remaining Wilton factors all touch on issues previously discussed in the Court's Colorado River analysis.  Because the Court is recommending that the District Court retain jurisdiction over the breach of contract claim, a recitation of these same reasons counseling against Wilton abstention is unnecessary.  I concur with Teknor Apex's reasoning that no efficiencies are

gained by considering the breach of contract claim while abstaining from jurisdiction over the declaratory judgment claim.  <u>Id.</u> at 15.  It would not be practical to recommend that the District Court retain jurisdiction over the contract claims, but stay or dismiss the declaratory claims.  The result would be either that the related breach of contract and declaratory relief claims would be litigated simultaneously in different forums, or that Teknor Apex would be required to come back to this Court, if it prevails on the declaratory relief claim in Massachusetts, to litigate its damages claim.  <u>Id.</u> at 17.  Hartford has not satisfied <u>Wilton</u> for the declaratory judgment claim, and even if <u>Wilton</u> was satisfied, it would be most efficient to hear both claims together in this Court.

Therefore, I recommend that Hartford's Motion to Dismiss or Stay be DENIED.  Hartford has not met its burden under <u>Colorado River</u> in regards to the breach of contract claim, nor under the <u>Wilton/Brillhart</u> standard for the declaratory judgment claims.  Because I am recommending that Hartford's Motion be DENIED, I now turn to Teknor Apex's Motion to Amend.

**B.      The Motion to Amend**

**1.      Standard of Review**

Under Rule 15(a), Fed. R. Civ. P., a complaint may be amended once as of right, and thereafter, with leave of Court or consent of the opposing parties. However, Rule 15 also provides that "leave to amend shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).  The district court is given "significant latitude in deciding whether to grant leave to amend." <u>U.S. ex rel. Gagne v. City of Worcester</u>, 565 F.3d 40, 48 (1st Cir. 2009).  Reasons that motions for leave to amend can be denied include "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." <u>Id.</u>

2.      **Analysis**

In the present case, Teknor Apex argues that it is entitled to amend "as a matter of course" pursuant to Rule 15(a)(1)(B), and that in the alternative, it is entitled to amend under the liberal amendment standard embodied in Rule 15(a)(2).  (Document No. 18 p. 2).  In support of its claim that it is entitled to amend as of right, Teknor Apex asserts that its Motion to Amend came within twenty-one days of Hartford's responsive pleading, which was Hartford's Answer on August 15, 2012.  Id.  Teknor Apex therefore reasons that its amendment was timely under Rule 15, and leave of Court is not required.  Id.

The first responsive pleading in the instant action, however, was Traveler's Answer (Document No. 13), which was filed on July 25, 2012.  The Advisory Committee Notes to the 2009 Amendments of Rule 15 state that the twenty-one day period is "not cumulative"and that there would be no new twenty-one day period to amend as of right if, for example, a responsive pleading is served after one of the designated motions is served.  Here, the twenty-one day period began to run with the filing of Traveler's Answer on July 25, 2012, and the window expired on August 15, 2012. The twenty-one day period did not reset merely by Hartford's filing of its responsive pleading. Therefore, Teknor Apex is not entitled to amend its Complaint as a matter of course pursuant to Rule 15(a)(1)(B).

Next, I must consider whether Teknor Apex should be granted leave to amend pursuant to Rule 15(a)(2). Teknor Apex argues that leave should be granted because no prejudice will result and no other circumstances exist that would warrant denial of its Motion at this early stage in the case. (Document No. 18 p. 3; Document No. 26 p. 4). Hartford, in contrast, argues that Teknor Apex's Motion should not be granted because the original Complaint could have included the proposed

-16-

amendments and would also duplicate the claims pending in the Massachusetts Superior Court action.  (Document No. 25 pp. 5, 7).

After considering the arguments, I find it would be unduly prejudicial at this time to grant Teknor Apex leave to amend.  Since Hartford voluntarily chose to initiate the Massachusetts Action after knowing that this related action had already been commenced, it is not Hartford that would suffer undue prejudice.   Instead, it is the excess insurance providers who would be prejudiced.  If leave to amend were granted, the excess insurance providers, who are only named as parties in the Massachusetts Action, would be required to defend themselves in two separate and parallel lawsuits at the same time.  Further, given that Teknor Apex strategically chose to file a narrow lawsuit in this Court, granting Teknor Apex leave to amend at this point would only exacerbate the problems presented by these related and overlapping lawsuits and increase the risk of inconsistent judgments.

Therefore, Teknor Apex is not entitled to amend as a matter of course pursuant to Fed. R. Civ. P. 15, and should not be granted leave to amend under these unique circumstances. At the hearing, Teknor Apex informed me that it has filed a Motion to Dismiss or Stay Proceedings in the Massachusetts Action.  In the event that the Massachusetts Superior Court agrees to dismiss or stay that proceeding, Teknor Apex may then seek leave to amend and expand its Complaint in this Court.

**Conclusion**

For the foregoing reasons, I recommend that Hartford's Motion to Dismiss or Stay Proceedings (Document No. 17) be DENIED and that Teknor Apex's Motion for Leave to File Amended Complaint (Document No. 18) be DENIED without prejudice.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); LR Cv 72.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
December 14, 2012